

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*　　　　　*United States Courthouse, Suite 9200*
　　　　　　　　　　　　　　　　　　　　　*1 Courthouse Way*
　　　　　　　　　　　　　　　　　　　　　*Boston, Massachusetts 02210*

March 12, 2004

Mark Smith
Smith & Laredo
15 Broad St. #600
Boston, MA 02109

　　　　　Re:   United States v. Jorge Rosario
　　　　　　　　Criminal No. 04-10051-PBS

Dear Mr. Smith:

　　Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case:

A.   Rule 16 Materials

1.   Statements of Defendant under Rule 16(a)(1)(A)

　　a.   Written Statements

　　There are no relevant written statements of the defendant Jorge Rosario, a/k/a "King Infamous" (hereinafter referred to as "the defendant") in the possession, custody, or control of the government.

　　b.   Recorded Statements

　　Consensual tape-recordings were made of personal meetings and telephone conversations involving the defendant and two cooperating witnesses as is indicated in the index attached as Exhibit 1. CW-1 is the individual who purchased crack cocaine from the defendant on April 14, 2003 as alleged in Count 2 of the indictment. CW-2 is the individual who purchased crack cocaine from the defendant on January 28, 2004 as alleged in Count 3 of the Indictment.

These tapes are available for your review and a copy of them is being prepared and will be forwarded to you. In the event your client is detained pending trial, a copy of the audiotapes will also be sent to the institution at which the defendant is being held in accordance with LR 116.4.

To date, draft transcripts of these tapes have not been prepared. However, summaries of some of the recorded conversations have been prepared as part of Bates Number documents 1-1028 that have previously been provided to you.

    c.    <u>Grand Jury Testimony of the defendant</u>

The defendant did not testify before the grand jury. Nor am I aware of any other statements made by him to law enforcement agents other than answers to the standard booking questions that would have been posed to him after his arrest or as may be referenced in the reports produced in this action. If I become aware of any such additional statements, I will advise you at once.

    d.    <u>Oral Statements to then Known Government Agents</u>

Other than booking statements referenced in the preceding paragraph and other statements that may be referenced in the reports produced in this matter, I am presently unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known by the defendant to be a government agent, which the government intends to use at trial. If I become aware of any such statements, I will advise you at once.

2.    <u>Defendant's Prior Record under Rule 16(a)(1)(B)</u>

I understand that you received a copy of prior criminal record of the defendant from Pretrial Services. Please contact me if you need a duplicate copy.

3.    <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

All books, papers, documents and tangible items that the are within the possession, custody, and control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this matter, or were obtained from or belong to the defendant may be examined by contacting the undersigned Assistant United States Attorney and making an appointment to view the same at a mutually convenient time.

4.   Reports of Examinations and Tests under Rule 16(a)(1)(D)

Copies of the DEA-7 laboratory reports relating to the drugs purchased from the defendant have been produced. Any additional laboratory reports received after the date of this latter will be forwarded to you when the are available.

Should we be unable to reach a stipulation as to the results of the examination of the drugs seized in this case, the government plans to offer testimony concerning the results of the laboratory analysis of the drug exhibits (i.e., that they are cocaine base) and testimony from the case agent or another qualified law enforcement agent that the drugs are that particular from of cocaine base known as crack cocaine. That testimony will be based on the agent's training and experience and his inspection of the color, appearance, texture, and/or odor of the drugs purchased form the defendant. The basis for such an opinion is more fully described in the grand jury testimony of S/A Mark Karangekis already produced to you and in the additional grand jury testimony (Bates Number documents 1029-1089) that are attached as Exhibit 2.

B.   Search Materials under Local Rule 116.1(C)(1)(b)

No search warrants were conducted of property belonging to the defendant in this case. Any items seized from the defendant at the time of his arrest may be examined by appointment in accordance with paragraph 3, above and a copy of any agency reports describing any inventory search will be provided to you upon receipt by this office. Search warrant materials concerning other searches in other cases included in the investigation of the Latin Kings are attached as Bates Numbered documents 1090-1172 that are also attached as part of Exhibit 3. Returns for those warrants (and reports summarizing the searches) have not yet been completed.

The government is not in possession of reports related to the seizures of evidence in this case that it anticipates offering in its case-in-chief beyond those items otherwise described in this letter.

C.   Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire or electronic communications of your client were intercepted by the government in connection with this case pursuant to 18 U.S.C. §§ 2510-2518.

D. <u>Consensual Interceptions under Local Rule 116.1(C)(1)(d)</u>

 As discussed above, this case involved the use of consensual monitored meetings and conversations that were recorded. Although summaries of some conversations have been prepared (and, as is indicated above, have been produced), no formal transcripts of these tapes (either draft or final) are presently available. Any such transcripts that are prepared will be made available to you in accordance with Local Rule 116.4(B). Although not required by Local Rule 116.1(C)(1)(d)(i), the government has also produced the FBI-302 and other reports relating to these consensual recordings and other contacts with the defendant concerning the offenses described in the Indictment. These reports were also included in the documents previously produced as Bates Number documents 1-1028.

E. <u>Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)</u>



REDACTED

REDACTED

F. <u>Identifications under Local Rule 116.1(C)(1)(f)</u>

There were several kinds of identification procedures used in the course of this investigation. In addition to traditional photographic arrays and identifications made by surveillance agents who were personally familiar with targets of the investigation, agents working on the case frequently reviewed videos of controlled purchases and compared the image and voice of the individual on the video to booking or other photographs of suspected targets. All such procedures of which I am aware are described in the police reports previously produced (including, with respect to the defendant the FBI-302s dated 4/14/03 and 1/31/04). All videos taken in this case will be made in accordance with the procedures described below.

Except as may be indicated in the documents produced to date, I have no information indicating that the defendant was the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo-spread or other display of an image of the defendant. In the event I become aware that such a procedure was used, I will advise you at that time and will provide you with copies of any tangible evidence reflecting, used in or memorializing the identification procedures.

G. <u>Exculpatory Evidence under Local Rule 116.2</u>

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1. The government is aware of no evidence that would tend directly to negate the defendants' guilt concerning any count in the Indictment.

2. The government is aware of no information that would cast doubt on the admissibility of evidence that the government anticipates offering as part of its case-in-chief and that could be subject to a motion to suppress or exclude.

3. The drug purchases made from the defendants in this case were made by the CWs described in paragraph A.1.b., above. Other than CW-1 and CW-2, no promises, rewards, or inducements have been given to any witness whom the government presently anticipates calling as part of its case-in-chief.

(a) **CW-1**. Prior to the date of this letter, CW-1 received $17,275 from the FBI in connection with its involvement in this and other investigations. This total includes payments for expenses.

In addition to these payments, additional rewards, payments, and inducements were given to CW-1 in connection with a probation violation pending against the CW in state court. The assistance on this matter included the payment of monies used to satisfy monetary obligations in the state court and otherwise resolving this matter. Law enforcement officials also assisted CW-1 in having his/her driving privileges restored/maintained, The government has also advised CW-1 that it will provide him with further assistance necessary to ensure CW-1's safety and the safety of CW-1's family.

(b) **CW-2**. Prior to the date of this letter, CW-2 received $15,500 from the FBI in connection with its involvement in this investigation. This total includes payments for expenses, including relocation expenses necessitated to ensure CW-2's safety.

In addition to these payments, additional rewards, payments, and inducements were given to CW-2 in connection with a controlled drug purchase made earlier in this investigation by another cooperating witness. After this purchase was made, CW-2 was advised of the purchase and told that he/she would not be immediately charged if he/she was willing to cooperate in this investigation and the fact and extent of that cooperation would be brought to the attention of the United States Attorney. Agents also assisted CW-2 in clearing an outstanding arrest warrant issued in a drug case in state court in order to facilitate his/her cooperation and then brought the fact of that cooperation to the district attorney who allowed CW-2 to plead guilty and recommended a sentence of probation which was accepted by the state district court judge. Agents also assisted CW-2 in having his/her driving privileges restored/maintained. CW-2 has

also been advised that agents will provide CW-2 further assistance as needed to protect CW-2 and CW-2's family from retaliation.

Pursuant to Local Rule 116.6(A), the government declines to disclose at this time the identity of CW-1 and CW-2. The government believes that such a disclosure would be detrimental to the interests of justice. The government takes the position that the exposure of the identity of CW-1 and CW-2 would put their safety and the safety of their families in jeopardy. The government is prepared to identify CW-1 and CW-2 at a reasonable time before trial.

4. Other than CW-1 and CW-2, the government is unaware that any of its named case-in chief-witnesses has any criminal record or criminal cases pending. Redacted copies of the criminal records for CW-1 and CW-2 are attached as Exhibit 3. As is indicated in Exhibit 3, the government also understands that CW-1 was charged and convicted of further crime in another state since the period of its cooperation ended. Pursuant to Local Rule 116.6(A), the government declines to produce further information about this matter at this time because it would tend to disclose identifying information about CW-1 and therefore endanger it. The government will disclose further information about this matter at a reasonable time before trial.

5. No named percipient witness failed to make a positive identification with respect to the crimes described in the indictment.

H. Other Matters

The government recognizes that its duty of disclosure and discovery as set forth in Local Rule 116 and Rule 16 of the Federal Rules of Criminal Procedure is a continuing one. In addition, please consider this letter to be a request for reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R. Crim. P. 16(b). I request that you provide a written response to my request for reciprocal discovery within 10 days of receipt of this letter.

I. Request for Alibi Information

According to the government's evidence, meetings and or conversations took place with the defendant on the following dates and times. At approximately 6:15 p.m. on 4/14/03, the defendant met with a CW at 16/16 Springfield Street in Lawrence. The CW returned to 16/18 Springfield Street at approximately 7:45

7

p.m. that evening and met with the defendant again. The defendant got into the CW's car and drove to Dascomb Road in Andover where they arrived at approximately 8:00p.m. The defendant the drove back to Lawrence with the CW and arrived at 16/18 Springfield street at approximately 8:20p.m. The CW met with the defendant at 16/18 Springfield Street for a third time on 4/14/03 at approximately 9:00p.m.

On 1/28/04 at approximately 5:55p.m. a CW met with the defendant inside the Market Street Projects in Lawrence. The CW returned to the Market Street Projects at 7:05p.m. and met with the defendant for a second time in a car in the parking lot of the projects.

Pursuant to Fed. R. Crim. P. 12.1, the government hereby requests notice of any intention to offer an alibi defense to the charged offense or any of the above-captioned meetings or conversations.

If you have any questions about any of this information or wish to discuss this case, please call us at (617) 748-3100.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JOHN A. WORTMANN, JR.
PETER K. LEVITT
Assistant U.S. Attorneys

enclosures

cc: Maria Simeone, Courtroom Clerk to
    Chief U.S. Magistrate Judge Lawrence Cohen
    (with information regarding co-conspirators redacted)