UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10051-PBS

UNITED STATES OF AMERICA

v.

JORGE ROSARIO

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

March 17, 2004

COHEN, M.

The above-named defendant was arrested on the basis of an indictment charging him with distribution of cocaine and conspiracy to do so. On the occasion of his first appearance, the government moved for pretrial detention on the grounds of danger to the community and risk of flight, and on the further ground that the defendant posed a danger to potential witnesses. After appointment of counsel, and a continuance at the request of the defendant, the detention hearing was held on March 16, 2003.

I. A. Under the provisions of 18 U.S.C. 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. 3142(b) or (c), or detained pending trial under the provisions of 18 U.S.C. 3142(e). See 18 U.S.C.

3142(a).

Under ß3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the safety of any other person or the community....", or if the judicial officer finds by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the appearance of the person as required ...".[1]

B. The government is entitled to move for detention on grounds of danger to the community in a case that--

(1) involves a crime of violence within the meaning of ß3156(a)(4);

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[2] or more; <u>or</u>

---

[1] The distinction between the former and latter are made clear by the very language of Section 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u>...". (Last emphasis added). By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applies. And that is precisely the holding in this and other Circuits. See e.g., <u>United States</u> v. <u>Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991); <u>United States</u> v. <u>Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>United States</u> v. <u>Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir.), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>United States</u> v. <u>Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985); <u>United States</u> v. <u>Himler</u>, 797 F.2d 156, 161 (3d Cir. 1986).

[2] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See <u>United States</u> v. <u>Moss</u>, __ F.2d __, No. 89-1859, Sl.Op. 8-12 (1st Cir. October 5, 1989).

(4) involves <u>any</u> felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning--

   (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (b) the weight of the evidence against the accused;

   (c) the history and characteristics of the person, including--

   (i) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (ii) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

   (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release....

D.  Additionally, in making the determination, the judicial officer must consider

two <u>rebuttable</u> presumptions, to wit:

<u>First</u>, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the <u>safety</u> of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a Federal crime of violence within the meaning of ß3156(a)(4) [or a state crime of violence within the meaning of ß3156(a)(4) if the offense would have been a <u>federal</u> offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act--e.g., possession of cocaine, heroin, more than 1000 pounds of marihuana, with intent to distribute--, or the Controlled Substances Import and Export Act, <u>or</u> any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.

<u>Second</u>, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of

imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under the provisions of 18 U.S.C. 924(c)--i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.

Insofar as the latter "presumption" is applicable in assessing "risk of flight", the burden remains with the government to establish "...that no condition or combination of conditions will reasonably assure the appearance of the person as required....". In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence", <u>United States</u> v. <u>Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991), indicating that these general findings are not applicable to him for whatever reason advanced. At this point, this court must weigh all relevant factors [set forth under ß3142(g)], and then determine whether any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required....".  The decision is an individualized one based on all relevant factors. See <u>United States</u> v. <u>Jessup</u>, 757 F.2d 378 (1st Cir. 1985).[3]

---

[3]   The presumption is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under Section 3142(d).  On later occasion, the United States Court of Appeals has observed, <u>inter</u> <u>alia</u>:

> Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, <u>Jessup</u>, 757 F.2d at 387--to be considered along with other factors.

<u>United States</u> v. <u>Palmer-Contreras</u>, 835 F.2d 15, 17-18 (1st Cir. 1987)(per curiam); <u>see</u> <u>also</u>, <u>United States</u> v. <u>Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however--

> the presumption does not disappear. The burden of persuasion remains on the government <u>and</u>

Additionally, with respect to those presumptions which are triggered by a finding of probable cause that the accused committed the offense with which he is charged, the return of an indictment "fair upon its face" conclusively establishes the existence of probable cause, and triggers the applicability of the particular presumption.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Vargas, 804 F.2d 157, 161 (1st Cir. 1986); United States v. Dominiguez, 783 F.2d 702 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-1479 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51, 52, 54-55 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. To the contrary, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate, on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983)--

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the

---

the rebutted presumption retains evidentiary weight. (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991).

community." (Emphasis added; footnotes omitted).

See also, United States v. Hawkins, 617 F.2d 59 (5th Cir.), certiorari denied, 449 U.S. 962 (1980)(trafficking in controlled substances).[4]

Finally, the presumptions are applicable if the judicial officer finds probable cause to believe that the accused has committed one of the predicate offenses referred to above, even if the charge before the court does not involve that particular offense. See United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988); but see, United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).[5]

II.  The defendant is 21 years old, having been born in Lawrence, Massachusetts, in 1982.  He is single and has two children by way of an ongoing relationship with one Elizabeth Beltran.  His mother resides in Lawrence, and his father resides in North Carolina.  He grew up in he custody of the Department of Social Services from the age 2 through age 18.  He says, most recently,[6] that he resides at 6

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under Sections 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under Section 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[5] In this court's view, Judge Robinson's decision in Bess, supra, is the more persuasive one, the holding in Chimurenga, supra, notwithstanding.  The Bail Reform Act of 1984 was modeled, in large part, on the preventative detention statutes in effect for a number of years in the District of Columbia.  This court does not view the requirement that the offense giving rise to the statutory presumption be contained within the formal charge as consistent with the procedural framework imposed by the statute.  The Chimurenga court seems to suggest that the requirement is necessary to provide fair notice to the defendant that the statutory presumption will come into play.  But a formal charge, as such, is only one method by which to give that fair notice.  For example, in a complaint charging armed bank robbery in violation of the provisions of 18 U.S.C. 2113(d), the operative facts set forth in the affidavit in support of the charging complaint may well state that the defendant was using a firearm during the commission of the robbery.  That is clearly fair notice.

Given the charges against defendant Carmelo Rodriguez, the statutory presumptions clearly apply to this case.

[6] *I.e.*, at his last interview with Pretrial Services. *See* note 7, *infra*

Washington Street in Lawrence with his aunt, uncle, and cousins, and that he has been living at that address for the past four years.[7] He is currently unemployed.[8] He has used marihuana on a daily basis for the past five years, and has used cocaine on the weekends for the past two years. He has no significant assets or liabilities.

He has a significant prior criminal record, both juvenile and adult, the specifics of which are set forth in the Pretrial Services Report. Among other things, that record shows that the defendant was adjudicated delinquent in 1999 as a juvenile on a charge of assault and battery. In October of 2002, he was convicted on a charge of possession of burglarious tools and receiving stolen property. On or about September 15, 2003, he was convicted on charges of possession of a Class D substance and possession of a Class D substance with intent to distribute.[9] During the course of his prior criminal charges, he was defaulted on some eleven different occasions

III. The record evidence before this court, consisting of the affidavit of Special Agent Mark Karangekis and his testimony, shows that the defendant, prior to his arrest, held a leadership position in the Lawrence Chapter of the Latin Kings,[10] part and parcel of a national gang involved in illegal activity, including the distribution of controlled substances, and bent on retaliating against anyone, and particularly Latin King

---

[7] He initially advised Pretrial Services that he resided at 16 Springfield Street, Lawrence, a known abode of the Latin King gang. He repeated that assertion under oath on the occasion of his first appearance before this court. *See* note, 6, *supra*.

[8] The defendant claims to work for a Funeral Home, but the credible evidence shows otherwise.

[9] This latter conviction is the predicate for the filing of an information charging the defendant as a second offender - meaning that he faces a <u>mandatory minimum</u> sentence of imprisonment for 10 years. *See infra.*

[10] He was and is known as King Infamous, and was reported to have become one of the ìCrown Officersî in the Lawrence chapter of the Latin Kings.

members, former or present, who cooperated with the authorities.[11]  On April 14, 2003, while on bail in connection with other state narcotics' charges, he sold 9.5 grams of "crack" cocaine to a confidential informant.[12]  In July of 2003, again while on bail in connection with the other state narcotics' charges, he told a cooperating witness that he had several guns that he wanted to sell and asked the cooperating witness to look for other gang members to whom he [the defendant] could sell the guns.  And in January of 2003, while on probation in connection with the other state narcotics' charges, he sold another seven grams, more or less, of "crack" cocaine to another cooperating witness.[13]

IV.   In the circumstances, this court finds and concludes that no condition or combination of conditions - short of pretrial detention - would reasonably assure the presence of the defendant at trial or the safety of the community.

Given the nature of the offenses charged, the statutory presumptions referred to above, pp. 3-7, clearly apply to this case.  And the defendant has proffered nothing which affects the weight of that statutory presumption.[14]

---

[11]  The structure and purpose of the national Latin Kings is set forth in the Affidavit of Special Agent Karangekis.  That affidavit, and the contents thereof, was introduced through the testimony of Special Agent Jeffrey Woods, the co-case agent along with Agent Karangekis.

[12]  This sale, as well as the January 2004 sale referred to *infra*, was both audio-taped and video-taped.

[13]  Because of this, and because the defendant has not complied with other conditions of his probation, a violation warrant has issued against him, and that warrant is currently pending against him.

[14]  "[T]he presumption does not disappear. The burden of persuasion remains on the government <u>and the rebutted presumption retains evidentiary weight</u>." (Emphasis added).

<u>United States</u> v. <u>Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). <u>See also</u>, <u>United States</u> v. <u>Rodriquez</u>, 950 F.2d 85, 88 (2d Cir. 1991).

That does not mean, of course, that the presumption is conclusive.  The question is whether the defendant has produced some evidence to show "that what is true in general is not true in [his] case...."   <u>Jessup</u>, supra, at

To the contrary, on the matter of flight, the defendant, upon conviction (and the evidence in support of a conviction is, on the basis of the current record before this court, overwhelming), faces a <u>mandatory</u> <u>minimum</u> sentence of imprisonment for <u>10</u> years.  Given his prior eleven defaults, his lack of employment, his falsifications concerning both his employment and his residence, and the almost certainty that the defendant will be sentenced to imprisonment for at least 10 years, the government has established by a preponderance of the evidence that the defendant, if released on conditions, would fail to appear as required.

So, too, with the matter of danger to the community.  All that the defendant proffers is that he would live with his uncle and aunt who would serve as third-party custodian.  This, however hardly provides any reassurances *vis a vis* the commission of further crimes, including the distribution of controlled substances.  After all, even taking the defendant at his word, and we do not, *see* notes 6 and 7, *supra*, he claims to have been living with his aunt and uncle for the past four years.  And, yet, the record evidence before this court shows that the defendant, notwithstanding where he lived, continued to distribute ìcrackî cocaine while on bail in connection with other pending state narcoticsí charges, offered to sell guns while on bail in connection with other pending state narcoticsí charges, and continued to sell yet more ìcrackî cocaine while on probation for state court convictions of possessing drugs with intent to distribute.  To that extent, defendantís own past, his prior conduct and deeds, is, indeed, his prologue.  The government has established by clear and convincing evidence that the defendant,

---

384.

if released on conditions, including the conditions which he proffered, would continue to pose a danger to the community.

In short, considering the statutory presumptions extant in this case, the government has established by clear and convincing evidence that the defendant, if released, would continue to ply his illicit trade, and the government has established by a preponderance of the evidence that the defendant, if released, would not appear as required.

V. IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered--

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

_____
UNITED STATES MAGISTRATE JUDGE